NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

06-3017

MICHAEL D. REED,

Petitioner,

v.

UNITED STATES POSTAL SERVICE,

Respondent.

_____

DECIDED: October 6, 2006

_____

Before BRYSON, <u>Circuit Judge</u>, CLEVENGER, <u>Senior Circuit Judge</u>, and GAJARSA, <u>Circuit Judge</u>.

PER CURIAM.

Michael D. Reed seeks review of the final decision of the Merit Systems Protection Board ("Board") dismissing his appeal for lack of jurisdiction. <u>Reed v. U.S. Postal Serv.</u>, No. CH3443040272-I-1 (August 24, 2005). We <u>affirm</u>.

I

Mr. Reed filed an appeal with the Board on February 7, 2004, alleging that the U.S. Postal Service ("agency") improperly failed to hire him for a position in May 1985, constructively suspended him from February 2002 until September 2003, and involuntarily demoted him from the position of PS-06 Letter Carrier to PS-05 Mail

Processing Clerk in September 2003. He also raised claims of age and disability discrimination.

Following a hearing, the Administrative Judge assigned to Mr. Reed's appeal dismissed the failure-to-hire claim for want of jurisdiction and declined to sustain the discrimination claims. However, the Administrative Judge sustained Mr. Reed's claims of constructive suspension and involuntary demotion. The agency petitioned for review by the Board, and Mr. Reed cross-petitioned for review of the Administrative Judge's ruling dismissing the discrimination claims.

II

When Mr. Reed began working as a letter carrier in 1986, he was capable of performing all the duties of the position, including the requirements of lifting and casing mail. He developed carpal tunnel syndrome in 1997, and he thereafter worked as a limited-duty status carrier from 1997 until 2001. In June 2001, he had surgery for shoulder tendonitis and returned to work as a carrier in limited-duty status in September 2001. In that status, he delivered express mail and performed clerk craft duties. In December 2001, the agency offered Mr. Reed, then a PS-06 carrier, a PS-05 clerk position. Mr. Reed declined the offer, and continued his limited-duty assignments. Those assignments included working with labels and stamping return-to-sender mail. Mr. Reed complained to the agency that the movements necessary to complete those tasks violated his repetitive motion restrictions. As a result of Mr. Reed's complaint, the agency concluded that there was no work available for Mr. Reed as a PS-06 Letter Carrier. Consequently, in February 2002, the agency summoned Mr. Reed to a supervisor's office where he was informed that the agency had no work available for

him as a letter carrier. The agency again offered Mr. Reed the PS-05 clerk position, which it believed to be within the physical limitations that Mr. Reed could endure. Mr. Reed was told that he must leave the premises if he refused the offer, and when he did refuse the offer, he was escorted off the premises. Mr. Reed applied for and received compensation benefits under the Federal Employees' Compensation Act, which is administered by the Department of Labor's Office of Workers' Compensation Programs ("OWCP").

In June 2003, the agency again offered a PS-05 clerk position, which Mr. Reed accepted. He returned to work in September 2003, and his compensation benefits terminated.

III

The Board held that the Administrative Judge erred in ruling that Mr. Reed had been involuntarily suspended from February 2002 until September 2003 and involuntarily demoted to the PS-05 position in September 2003.

With respect to the issue of involuntary suspension, the Board correctly noted that the dispositive issue in determining if the suspension was involuntary is who initiated the absence. Perez v. Merit Sys. Protection Bd., 931 F.2d 853, 855 (Fed. Cir. 1991) ("It was his choice, not the agency's, to remain away from work."). Upon review of the evidence, the Board concluded that, even though Mr. Reed was escorted off the premises in February 2002, such was the result of his refusal to accept the only job available to him in the agency. The Board held that the agency had not instructed Mr. Reed not to report for work. To the contrary, the agency notified Mr. Reed by letter on March 5, 2002, that the clerk position offer was still open should Mr. Reed wish to

accept the offer and return to work. As Mr. Reed had himself contended that the physical burdens of the carrier job excluded him from it, the Board held that the agency had offered Mr. Reed a job it felt he could perform. Mr. Reed was found by the Board to have placed himself out of work by declining the clerk position. Consequently, the Board held that Mr. Reed, not the agency, had initiated Mr. Reed's absence from work. As such, his absence from work from February 2002 until September 2003 did not constitute a constructive suspension.

The Board also rejected the Administrative Judge's analysis of the involuntary demotion issue. The Administrative Judge concluded that the wrongful (to the Administrative Judge) suspension placed the agency in such a position of power over Mr. Reed that he had no realistic alternative but to accept the demotion to the PS-05 position. The Board, having rejected the Administrative Judge's premise, concluded that Mr. Reed voluntarily accepted the lower grade position.

The Board's jurisdiction over Mr. Reed's appeal depended upon whether Mr. Reed's contentions of constructive suspension and involuntary demotion had merit. When the Board rejected those contentions, it found itself without jurisdiction to address Mr. Reed's cross-petition for review of the discrimination issues.

Mr. Reed timely sought review in this court of the Board's final decision dismissing his appeal. He now challenges the Board's decision on the suspension and demotion issues.

IV

We must affirm the final decision of the Board unless we determine that it is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.

5 U.S.C. § 7703(c) (2000). Further, where the Board's decision rests on findings of fact, we must sustain its fact-findings if supported by substantial evidence. Id.

The facts demonstrate, by more than substantial evidence, that Mr. Reed declared himself unfit for the PS-06 letter carrier position and that the agency had no work available for him in that status. The agency offered him a suitable alternative, less attractive to be sure, which he rejected. During his entire period of suspension, he received compensation from OWCP. Mr. Reed's options were few: he could return to work in a lower grade position and forfeit OWCP compensation, or he could remain in non-pay suspension status. The Board's finding that Mr. Reed absented himself from work, rather than being pushed into absence by the agency, is supported by substantial evidence. That finding underlies the Board's conclusion that his suspension was not constructively caused by the agency. We see no error in the Board's conclusion that Mr. Reed failed to show a constructive suspension by the agency.

The evidence is also substantial supporting the Board's conclusion that Mr. Reed voluntarily accepted the PS-05 position to which he returned in September 2003. His claim to a forced demotion was correctly rejected by the Board.

Because we affirm the Board's final decision on the suspension and demotion issues, the Board was correct in determining that it lacked jurisdiction to address Mr. Reed's cross-petition for review of the discrimination issues on which the Administrative Judge ruled adversely to Mr. Reed.

The Board's final decision is affirmed.