# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

KIMBERLA TURNER,
Appellant,

DOCKET NUMBER
DA-0752-18-0253-I-1

v.

DEPARTMENT OF DEFENSE,
Agency.

DATE: August 21, 2024

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Kimberla Turner, Rowlett, Texas, pro se.

Richard L. Todd, Esquire, Arlington Heights, Illinois, for the agency.

Mary E. Coleman, Esquire, Dallas, Texas, for the agency.

## BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member

## FINAL ORDER

The appellant has filed a petition for review of the initial decision, which dismissed her constructive suspension appeal for lack of jurisdiction. On petition for review, the appellant generally disagrees with the administrative judge's findings and alleges that she committed a number of procedural errors.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to clarify the basis for the jurisdictional dismissal, we AFFIRM the initial decision.[2]

## BACKGROUND

¶2 For reasons unrelated to her medical conditions, the appellant had been teleworking full time when, in November 2017, the agency notified her that it was requiring her to return to the office 3 days a week. Initial Appeal File (IAF), Tab 16 at 24, 27-29, Tab 20 at 14-15. The appellant protested the directive and asked to continue her full-time telework schedule. IAF, Tab 16 at 29, 37-39. The agency denied her requests. *Id.*

¶3 On December 5, 2017, the appellant sent her supervisor a request for reasonable accommodation in the form of "100% Telework with personally tailored staggered return to office," based on "[e]xtreme stress and issues

---

[2] Because the appellant raised a claim of disability discrimination in this constructive suspension appeal, and the Board has now issued a Final Order dismissing the appeal for lack of jurisdiction, the agency is required, under Equal Employment Opportunity Commission regulations, to issue a notice under 29 C.F.R. § 1614.302(b) informing the appellant of her right to contact an equal employment opportunity counselor within 45 days of her receipt of the notice.

stemming from the extreme stress caused by previous workplace assault, sexual harassment, hostile work environment and dispara[te] treatment." *Id.* at 46-47. On December 7, 2017, the appellant's supervisor instructed her to submit supporting medical documentation, to be reviewed by Federal Occupational Health (FOH), and to fill out an authorization form to allow FOH to communicate with her medical provider. *Id.* at 45, 150.

¶4      The next day, December 8, 2017, the appellant submitted a telework agreement for approval, designating Tuesdays and Fridays as her regular telework days. IAF, Tab 29 at 6-7. On December 12, 2017, the appellant's first-level supervisor informed her that there was no provision for "[m]edical [t]elework without an approved [telework] agreement," that her telework agreement was not being approved because of performance and conduct reasons, that she was no longer eligible for telework, and that she would be informed when she would be allowed to request to telework again. *Id.* at 14. It was not until February 6, 2018, that the appellant's supervisor invited her to submit a new agreement for 2 days of telework per week, pending a final decision on her reasonable accommodation request. *Id.* at 28. The appellant did not submit a new telework agreement.

¶5      On January 18, 2018, the appellant provided the agency a note from her nurse practitioner, which stated, in part, as follows:

> It is my medical opinion that the [appellant's] ability to work from home and avoid a hostile work environment would be significantly beneficial and speed up her recovery.
>
> With the ability to have a relatively stress-free environment or the ability to gradually return to the office environment while being consistent with medical and counseling appointments, Ms. Turner's prognosis is good, especially if a good resolution to the conflict at work is found.

IAF, Tab 16 at 17. FOH considered the medical note and, on February 5, 2018, advised the agency that "it is difficult to determine if this is really a disability issue in terms of the [Americans with Disabilities Act Amendments Act] or it is an interpersonal issue specific to her current workplace." *Id.* at 18. FOH further

advised that it had thrice attempted to contact the appellant's nurse practitioner to get more information, but the nurse practitioner did not respond. *Id.* Two days later, on February 7, 2018, FOH updated its assessment, stating that it had spoken with the nurse practitioner, and based on that conversation there "appear[ed] to be a mix of bona fide medical issues plus interpersonal issues that are specific to her office." *Id.* at 19. FOH advised that "[t]here is thus somewhat of a disability issue here" and recommended that the appellant be initially allowed to telework for 3 months and that her status be reassessed at that time, with updated medical documentation, should she request an extension. *Id.*

¶6        On February 20, 2018, the agency requested that FOH clarify its letter, including what it meant by "somewhat of a disability."[3] *See id*. at 20. On March 15, 2018, FOH sent the agency a more detailed letter, explaining the appellant's conditions and diagnoses and the major life activities affected. *Id.* at 20-21. FOH reiterated its recommendation that the appellant be permitted to telework for 3 months and that her status be reevaluated at the end of that time. *Id.* On March 19, 2018, the agency notified the appellant that her reasonable accommodation request was approved, effective March 26, 2018, and that she would be able to begin teleworking full time on that date. IAF, Tab 35 at 15. When March 26, 2016, arrived, the appellant's supervisor notified her that she would need to have a new telework agreement approved before she could begin teleworking. *Id.* at 14. According to the agency, the appellant submitted a new telework agreement on April 2, 2018, and her supervisor approved it on April 4, 2018. IAF, Tab 20 at 8. The appellant, who had been using annual and sick leave and leave without pay (LWOP), and who was for some time classified as absent without leave (AWOL), was returned to duty in a full-time telework status. IAF, Tab 20 at 8, 17-27.

---

[3] The agency apparently made this request in an email that does not appear to be in the record. The email is referenced in FOH's March 15, 2018 letter, which is in the record. IAF, Tab 16 at 20. The agency also stated in its narrative response that it requested this clarification from FOH. *Id.* at 8.

¶7       The appellant filed this Board appeal on March 23, 2018, alleging that the agency forced her to use sick and annual leave and placed her in LWOP and AWOL status, rather than provide her with a reasonable accommodation. IAF, Tab 1 at 5. An administrative judge found that the appellant made a nonfrivolous claim of constructive suspension and was thus entitled to her requested hearing.[4] IAF, Tab 12. The case was then reassigned to another administrative judge. IAF, Tab 14. The appellant withdrew her request for a hearing, IAF, Tab 31, and after the close of the record, the administrative judge issued an initial decision dismissing the appeal for lack of jurisdiction, IAF, Tab 42, Initial Decision (ID). The administrative judge found that the appellant did not prove a constructive suspension because her absence was not attributable to any wrongful act by the agency. ID at 9-13. The administrative judge acknowledged that an agency's unreasonable delay in providing a reasonable accommodation can amount to a denial of an accommodation, but she found that the appellant was responsible for the delay between her initial request for accommodation on December 8, 2017, and FOH's receipt of the required information on February 7, 2018. ID at 9-10. She further found that the remainder of the delay was largely attributable to the agency seeking clarifying information from FOH and that the agency's actions in this regard were reasonable.[5] ID at 11-12.

---

[4] The administrative judge provisionally determined that the appeal was properly construed as a constructive suspension appeal, rather than an enforced leave appeal, but reserved any ruling in that regard until after the close of the record. IAF, Tab 12 at 3. He also explained that, to the extent the appellant had raised a disability discrimination claim, that claim was not properly before the Board until the appellant established jurisdiction over her appeal. *Id.* at 3 n.1.

[5] The administrative judge also found that the appellant did not prove a constructive suspension based on intolerable working conditions. ID at 12-13. Specifically, the administrative judge found that, even if the appellant reasonably believed she was subjected to a hostile work environment between 2013 and 2016, she presented no evidence that the conditions were intolerable during the period of absence at issue here, and any belief that the earlier hostility would continue into the present was, under the circumstances of this case, purely speculative. ID at 13. We agree with that portion of the administrative judge's analysis.

¶8      The appellant has filed a petition for review arguing that the administrative judges' various actions during the course of the appeal were inconsistent with required procedures, that the administrative judges were biased, and that the initial decision incorrectly set forth the facts and the law.  PFR File, Tab 1.  The agency has filed a response to the petition, and the appellant has filed a reply. PFR File, Tabs 4-5.

## ANALYSIS

¶9      The Board lacks jurisdiction over appeals of employees' voluntary actions; however, it has always recognized that employee-initiated actions that appear voluntary on their face are not always so.  *Bean v. U.S. Postal Service*, 120 M.S.P.R. 397, ¶ 7 (2013).  The Board may have jurisdiction over such actions under 5 U.S.C. chapter 75 as "constructive" adverse actions.  *Id.*  Like involuntary resignations, removals, and reductions in pay or grade, involuntary leaves of absence may be appealable to the Board under chapter 75 as constructive suspensions.  *Id.*, ¶ 8.  To establish jurisdiction over a constructive suspension appeal, an appellant must prove that:  (1) she lacked a meaningful choice in the matter; and (2) it was the agency's wrongful actions that deprived her of that choice.  *Id.*  Assuming that the jurisdictional requirements of chapter 75 are otherwise met, proof of these two things is sufficient to establish Board jurisdiction.  *Id.*

The appellant was constructively suspended on some dates between February 8, 2018, and March 23, 2018.

¶10     Having carefully reviewed the record, we conclude that the appellant lacked a meaningful choice in a majority of her absences between February 8, 2018, and March 23, 2018, and that those absences were due to the improper actions of the agency.  As for the first element, the appellant provided evidence demonstrating a medical need for her to telework full time.  The Board has found it "difficult to imagine" circumstances in which working outside of medical restrictions would

be a viable option for Federal employees. *Bean*, 120 M.S.P.R. 397, ¶ 13. This case is no exception. Therefore, because the agency refused to allow her to telework consistent with her medical restrictions, the appellant lacked a meaningful choice in being absent from duty on the days she was not authorized to telework.

¶11 As for whether the appellant's involuntary absences can be attributed to the agency's improper acts, the answer to that varies depending on the time period. For the reasons stated by the administrative judge, we agree that the appellant was responsible for the delay in providing medical evidence between her initial request for accommodation on December 8, 2017, and February 7, 2018, when FOH finally obtained sufficient information to make a recommendation on the appellant's request and communicated that recommendation to the agency.[6]

¶12 We do not agree that the agency had a sufficient basis to delay implementing the telework accommodation after that time. It appears that the agency was confused by the line in the February 7, 2018 letter about there being "somewhat of a disability issue." IAF, Tab 16 at 8, 20. However, the letter was perfectly clear about the appellant's medical conditions, the effects of those conditions, and FOH's recommendation that the agency accommodate the appellant with at least 3 months of telework. *Id.* at 19. The agency failed even to acknowledge FOH's clear recommendation and chose instead to fixate on the phrase "somewhat of a disability issue," the meaning of which was clear when considered in context. FOH's March 15, 2018 follow-up letter connected the dots more explicitly, but the agency has not explained what exactly the February 7, 2018 letter was lacking as compared to the March 15, 2018 letter. Therefore, it has not justified that portion of the delay in returning the appellant to duty.

¶13 Furthermore, even assuming that the February 7, 2018 letter lacked some information that the agency needed to process the appellant's request, it was the

---

[6] We agree with the administrative judge that the appellant did not prove that she requested accommodations at any time prior to December 8, 2017. ID at 10 n.2.

agency's decision to use FOH as its medical reviewer. To the extent that FOH failed to give the agency a clear assessment to begin with, the appellant should not bear the consequences.

¶14    As for the delay after March 15, 2018, the agency has not explained why it decided to delay implementation of the accommodation until March 26, 2018. Nor is any reason for the delay apparent because the required accommodation was not difficult to implement. Accordingly, we find that the agency is responsible for that portion of the delay as well.

¶15    As for the time period from March 26, 2018, forward, the further delay in implementation was due to the agency's requirement that the appellant sign and submit a new telework agreement. IAF, Tab 35 at 14. This was a reasonable requirement that the agency communicated to the appellant in advance, yet the appellant waited a whole week, until April 2, 2018, to submit a telework agreement for approval. The agency then acted reasonably quickly in approving the telework agreement and returning the appellant to duty. Accordingly, we find that the appellant is responsible for this last portion of the delay.

¶16    This leaves a total of 31 regular workdays[7] (excluding the President's Day holiday) between February 8, 2018, and March 23, 2018 (the last business day before March 26), for which the agency unreasonably delayed implementation of the full-time-telework accommodation. Therefore, we find that the appellant was involuntarily absent for at least some portion of this time period.

**The appellant's nonconsecutive days of constructive suspensions are not appealable under 5 U.S.C. chapter 75.**

¶17    Under most circumstances, the appellant's absences that were caused by agency's failure to accommodate her between February 8, 2018, and March 23,

---

[7] We recognize that this calculation is based on a 5-day per week work schedule and that the appellant may have been on a 4-day per week schedule at some point during the relevant time period. IAF, Tab 20 at 17-27, Tab 35 at 12. However, the appellant's time cards reflect a 5-day per week schedule, and our calculation based on a 5-day per week schedule does not affect the outcome in any event.

2018, would constitute an appealable constructive suspension. *See Yusuf v. U.S. Postal Service*, 112 M.S.P.R. 465, ¶ 13 (2009) (finding that an employee's absence for more than 14 days that results in a loss of pay may be a constructive suspension appealable under 5 U.S.C. §§ 7512(2) and 7513(d)); *Reed v. U.S. Postal Service*, 99 M.S.P.R. 453, ¶ 3 (2005) (same), *aff'd*, 198 F. App'x 966 (Fed. Cir. 2006). However, with limited exceptions not applicable here, the Board's chapter 75 jurisdiction extends only to suspensions of more than 14 *consecutive* days. *Mitchell v. Department of Transportation*, 109 M.S.P.R. 480, ¶¶ 4-5 (2008); *see, e.g., Gage v. Merit Systems Protection Board*, 482 F. App'x 546, 549 (Fed. Cir. 2012) (finding no precedent for combining nonconsecutive suspensions of 14 days or less for purposes of finding Board jurisdiction); *Giannetto v. Department of Transportation*, 109 M.S.P.R. 522, ¶ 5-6 (2008) (same). For the reasons discussed below, the instant appeal does not satisfy that jurisdictional requirement.

¶18 As stated above, the agency notified the appellant on February 6, 2018, that she was eligible to telework 2 days per week. IAF, Tab 29 at 28. The appellant does not allege that she would have been unable to telework twice per week even if she needed to absent herself for the remaining 3 days, and the agency cannot be held responsible for the appellant's failure to avail herself of this opportunity. Therefore, the appellant has not shown that her absences for 2 days for each of the 6½ weeks at issue were involuntary; she could have, but chose not to, telework on those days. Depending on which days the appellant might have chosen to telework, and even if she varied her telework days from week to week, the appellant could not have had any more than 6 days of consecutive involuntary absence during this time period.

¶19 In sum, the appellant has shown that the agency's improper actions, the unwarranted delay in implementing her full-time-telework accommodation, necessitated her absence from work for approximately 18 days between February 7, 2018, and March 23, 2018. However, these 18 days of involuntary

absence were nonconsecutive, such that the appellant could not meet the jurisdictional requirement of more than 14 days of consecutive absence. Therefore, the Board lacks jurisdiction over this appeal.

The appellant's arguments on petition for review regarding procedural errors and bias do not provide a basis to disturb the initial decision.

¶20    The appellant argues that the administrative judges' rulings during the course of the appeal were inconsistent with required procedures and that the administrative judges were biased against her.  Petition for Review (PFR) File, Tab 1.  Regarding the administrative judges' rulings during the course of the appeal, the appellant asserts that the decision of the administrative judge initially assigned to her appeal to not remove himself from the appeal after acknowledging that he worked in the same office as the agency counsel harmed her in that she lost confidence in the Board to properly adjudicate her case.  *Id*. at 6.  The first administrative judge discussed the fact that he had previously worked for the agency 4 years prior to the appeal but noted that he did not know agency counsel or any other agency employee thus far named in the appeal.  IAF, Tab 12 at 3-4.  In any event, 4 days after the status conference in which the administrative judge disclosed this issue, the case was reassigned to another administrative judge.  IAF, Tab 14.

¶21    The appellant also argues that she was harmed by the administrative judge's denial of her requests to reopen discovery and for an extension of time to submit her prehearing submission.  PFR File, Tab 1 at 7.  It is well settled that an administrative judge has broad discretion to regulate the proceedings before her, including the authority to rule on discovery motions.  *Defense Intelligence Agency v. Department of Defense*, 122 M.S.P.R. 444, ¶ 16 (2015).  We agree with the administrative judge that the appellant failed to establish good cause for reopening the discovery period or for failing to timely submit her prehearing submission.  IAF, Tab 23 at 2.  Notably, the administrative judge nonetheless granted, in part, the appellant's request for an extension.  *Id*. at 2-4.

¶22    The appellant further argues that the administrative judge improperly denied some of her witness requests. PFR File, Tab 1 at 7-8. In her order and summary of the prehearing telephonic conference, the administrative judge stated that she approved four of the appellant's witnesses, consisting of herself, two joint agency witnesses, and another witness. IAF, Tab 23 at 3-4. The administrative judge denied three other witnesses that the appellant requested because their proffered testimony appeared irrelevant, immaterial, or repetitive. *Id*. at 4. The order and summary of the telephonic prehearing conference noted that if either party disagreed with the summary, an objection or motion to supplement had to be filed by June 18, 2018. *Id*. at 6. No objection or motion to supplement was filed by either party. The appellant's failure to timely object to rulings on witnesses precludes her from doing so on petition for review. *White v. Department of Veterans Affairs*, 120 M.S.P.R. 405, ¶ 21 (2013). Furthermore, an administrative judge has wide discretion under 5 C.F.R. § 1201.41(b)(8), (10) to exclude witnesses when it has not been shown that their testimony would be relevant, material, and nonrepetitious. *Lu v. Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 8 (2015). In any event, the appellant waived her requested hearing, the appeal was decided based on the written record, and there is no indication that the administrative judge prevented the appellant from submitting statements from the witnesses she discusses on review. IAF, Tabs 31-33; ID.

¶23    The appellant additionally argues that neither administrative judge made special efforts to accommodate her as a pro se appellant, and that the second administrative judge erred by not holding a status conference immediately after issuing certain orders, some of which the appellant received late. PFR File, Tab 1 at 6-7. We find that the appellant has failed to show that either of the administrative judges' actions during the course of the appeal were inconsistent with required procedures, and, contrary to her contention, the record shows that they did consider and accommodate her pro se status. IAF, Tabs 7, 12, 19, 23, 26.

¶24    Regarding her claims of bias, the appellant argues that the administrative judges displayed favoritism toward the agency by (1) granting the agency an extension of 7 days to submit the agency file; (2) directing the agency to contact the Board's employees with "whatever arrangements are needed";[8] (3) instructing the appellant not to submit the agency policy regarding reasonable accommodations;[9] and (4) relying heavily on the agency file rather than the appellant's signed declaration. *Id.* at 8. In making a claim of bias or prejudice against an administrative judge, a party must overcome the presumption of honesty and integrity that accompanies administrative adjudicators. *Oliver v. Department of Transportation*, 1 M.S.P.R. 382, 386 (1980). Furthermore, an administrative judge's conduct during the course of a Board proceeding warrants a new adjudication only if his or her comments or actions evince "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Bieber v. Department of the Army*, 287 F.3d 1358, 1362-63 (Fed. Cir. 2002) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)); *Scoggins v. Department of the Army*, 123 M.S.P.R. 592, ¶ 19 (2016). Upon review of the record, we find no evidence of bias by either administrative judge.

¶25    Accordingly, we deny the appellant's petition for review and affirm the initial decision as expressly modified to clarify the basis for the jurisdictional dismissal.

---

[8] The administrative judge directed the agency to contact members of the Dallas Regional Office's administrative staff regarding "whatever arrangements are needed for the video conference hearing." IAF, Tab 23 at 4. There is nothing improper with an administrative judge taking such a step to ensure that video technology works properly on the day of the hearing and that both parties can fully participate in the hearing.

[9] The agency's reasonable accommodations policy is in the record as part of the agency file. IAF, Tab 16 at 199-249. Thus, it was unnecessary for the appellant to also submit it.

**NOTICE OF APPEAL RIGHTS**[10]

The initial decision, as supplemented by this Final Order, constitutes the Boards final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

---

[10] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any

requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's

disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[11]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

[11] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction.  The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                    *Gina K. Grippando*
                                  _____
                                  Gina K. Grippando
                                  Clerk of the Board

Washington, D.C.